Randy J. Cox
Thomas J. Leonard
BOONE KARLBERG P.C.
201 West Main, Suite 300
P.O. Box 9199
Missoula, MT 59807-9199
Telephone: (406) 543-664
rjcox@boonekarlberg.com
tleonard@boonekarlberg.com

*Attorneys for Defendants United Specialty*
*Insurance Company and Underwriting*
*Services Management Company, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| MARK BIEGLER,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>G.M.I. N.A. INC. D/B/A GMI INSURANCE; UNDERWRITING SERVICE MANAGEMENT COMPANY, LLC; UNITED SPECIALTY INSURANCE COMPANY, and DOES 1-10,<br><br>　　　　　Defendants. | Cause No. 6:20-CV-0032-CCL<br><br>**BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

**TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………1

BACKGROUND………………………………………………………...1

MOTION TO DISMISS STANDARD…………………………………………6

ANALYSIS……………………………………………………………...7

    A.    General Jurisdiction Is Lacking…………………………………8

    B.    Specific Jurisdiction Is Lacking…………………………………..10

    C.    The Exercise of Jurisdiction Would Not Comport
        With Due Process……………………………………………16

CONCLUSION…………………………………………………………...18

# TABLE OF AUTHORITIES

**Federal Cases**                                                                 **Page(s)**

*BNSF Ry. v. Tyrrell,*
  581 U.S. at __, 137 S. Ct. 1549 (2017) .............................................................. 8

*Boschetto v. Hansing,*
  539 F.3d 1011 (9th Cir. 2008) ........................................................................ 6

*Chem Lab Products, Inc. v. Stepanek,*
  554 F.2d 371 (9th Cir. 1977) ......................................................................... 7

*Core-Vent Corp. v. Nobel Indus. AB,*
  11 F.3d 1482 (9th Cir. 1993) ............................................................... 16-17, 17

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014) .............................................................................. 8, 9, 16

*Data Disc, Inc. v. Systems Tech. Assocs.,*
  557 F.2d 1280 (9th Cir. 1977) ....................................................................... 7

*Davis v. Am. Family Mut. Ins. Co.,*
  861 F.2d 1159 (9th Cir. 1988) ................................................................. 7-8, 8

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
  564 U.S. 915 (2011) ..................................................................................... 8

*International Shoe Co. v. Washington,*
  326 U.S. 310 (1945) ..................................................................................... 8

*King v. Am. Family Mut. Ins. Co.,*
  632 F.3d 570 (9th Cir. 2011) ................................................................. *passim*

*Mavrix Photo, Inc. v. Brand Techs., Inc.,*
  647 F.3d 1218 (9th Cir. 2011) ........................................................................ 6

*Pebble Beach Co. v. Caddy,*
  453 F.3d 1151 (9th Cir. 2006) ........................................................................ 6

*Scott v. Breeland,*
  792 F.2d 925 (9th Cir. 1986) ...................................................................... 6-7

*Walden v. Fiore,*
  571 U.S. 277 (2014) .............................................................................. 10, 16

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme,*
    433 F.3d 1199 (9th Cir. 2006) ............................................................ 7

*Ziegler v. Indian River Cnty.,*
    64 F.3d 470 (9th Cir. 1995) ............................................................... 16

**State Cases**

*Bird v. Hiller,*
    892 P.2d 931 (Mont. 1995) ......................................................... 13, 15

*Buckles v. Cont'l Res., Inc.,*
    462 P.3d 223 (Mont. 2020) ............................................................... 10

*Cimmaron Corp. v. Smith,*
    67 P.3d 258 (Mont. 2003) ..................................................... 13, 14, 15

*DeLeon v. BNSF Ry. Co.,*
    426 P.3d 1 (Mont. 2018) .................................................................... 8

*Edsall Construction Co., Inc. v. Robinson,*
    246 Mont. 378(1991), 804 P.2d 1039 .............................................. 13

*Grizzly Sec. Armored Express, Inc. v. Armored Group, LLC,*
    255 P.3d 143 (Mont. 2011) ............................................................... 12

*Tackett v. Duncan,*
    334 P.3d 920 (Mont. 2014) ......................................................... 15, 16

*Threlkeld v. Colo.,*
    16 P.3d 359 (Mont. 2000) ............................................................... 15

**Rules**

Fed. R. Civ. P. 12(b)(2) ........................................................................ 1, 6

Mont. R. Civ. P. 4(b)(1) ...................................................................... 7, 11

**Other**

U.S. Const. amend. XIV .......................................................................... 16

## INTRODUCTION

Though filed in Montana, this case arises from the sale of an insurance policy by a Delaware/Texas insurance company to a California insured though a Pennsylvania managing general agent and Pennsylvania insurance wholesaler. During the procurement process, the California insured was represented by a team of brokers from England, Alabama and Montana.  Although Plaintiff is alleged to be a Montana insurance broker, his own allegations, along with the affidavits submitted herewith, demonstrate Defendant United Specialty Insurance Company ("United Specialty"), a Delaware/Texas insurance company, and Defendant Underwriting Services Management Company, LLC ("USMC"), a Delaware/Pennsylvania managing general agent, lack sufficient contacts with the State of Montana to establish either general or specific jurisdiction.  These Defendants must be dismissed under Fed. R. Civ. P. 12(b)(2).

## BACKGROUND

Plaintiff Mark Biegler ("Biegler"), a retail insurance broker, makes an unprecedented claim in this lawsuit:  He claims he is owed lost commissions—for "the remainder of [his] worklife expectancy," no less—because an insurance company decided not to continue covering one of his clients.  (Doc. 1, ¶¶ 2, 10-31, 50(a).)  Against United Specialty and USMC, his claim is particularly questionable because Biegler had zero contact with either entity when procuring the policy, and

had no contract or agreement with either entity, much less one that would have made them responsible for paying his commissions.  (Doc. 1, ¶¶ 10-31; Affidavit of John Kolb, attached as **Exhibit A**, ¶¶ 19, 22; Affidavit of David Cleff, attached as **Exhibit B**, ¶ 12.)  Notwithstanding the dubious nature of the lawsuit, the merits are not currently at issue because no personal jurisdiction exists over United Specialty or USMC.

In his complaint, Biegler alleges he is a Montana insurance producer (agent) who represented Fleetlogix, Inc. ("Fleetlogix").  (Doc. 1, ¶ 1, 11, 10.)  Fleetlogix is a California corporation based in San Diego.  (Doc. 1-1, 1-6, 1-8; Doc. 14 at 23, n. 7.)  There is no allegation Fleetlogix does business in Montana or has any significant Montana contacts.

According to the complaint, Biegler was Fleetlogix's insurance agent for approximately six years, but then sold his book of business to another company.  (Doc. 1, ¶¶ 10, 11.)  When Fleetlogix was shopping for a new policy in 2018, it told Biegler he could again serve as its agent if he could find a policy on better terms than what Fleetlogix had been offered by another agent.  (Doc. 1, ¶ 11.)

Biegler determined that no admitted carrier would cover Fleetlogix, so he would need to find surplus lines coverage.  (Doc. 1, ¶ 12.)  Surplus lines coverage is insurance placed with an insurer that is not admitted (not licensed) to do

business in a particular state, but permitted because coverage is not available through licensed insurers.  (Ex. A, ¶ 16.)

Biegler assembled a team with two other brokers—Scott Ballard of ec3 Insurance (a broker in London, England), and Craig Cordes of Commercial Sector Insurance (a broker in Alabama)—to procure a policy for Fleetlogix.  (Doc. 1, ¶ 12; Doc. 12 at 4, n. 3.)  This team of brokers began working with GMI, a Pennsylvania insurance wholesaler.  (Doc. 1, ¶¶ 12-17.)  An insurance wholesaler is a type of insurance broker who acts as an intermediary between a retail broker and an insurer, while having no contact with the insured.  (Ex. A, ¶ 19.)  Wholesale brokers often possess specialized expertise in a particular line of coverage or in a line of coverage that is unusual, which is valuable when dealing with a difficult-to-place risk.  (Ex. A, ¶ 19.)

The complaint makes clear that all of Biegler's communications during the procurement process were with GMI.  (Doc. 1, ¶¶ 12-17.)  At no point during this process did Biegler, or any of his colleagues, have any contact or communications with either USMC or United Specialty.  (Doc. 1, ¶¶ 12-17; Ex. A, ¶ 18; Ex. B, ¶ 10.)  Indeed, at no point before the sale and issuance of the subject insurance policy did USMC or United Specialty have any knowledge of Biegler's existence, or any idea that a Montana retail broker was involved, because they dealt

exclusively with GMI and were placing coverage for a California company.  (Ex. A, ¶ 23, 24; Ex. B, ¶ 10.)

Through GMI, the group of brokers procured a United Specialty policy for Fleetlogix for April 11, 2018 to April 11, 2019 policy period.  (Doc. 1, ¶¶ 12-17; 1-1-1-5.)  Notably, the policy quote expressly stated all Fleetlogix drivers were required to have at least $1 million in underlying liability insurance:  "DRIVERS MUST CARRY $1M CSL OR MORE."  (Doc. 1-7.)

In May 2018, Fleetlogix, through Biegler, submitted an insurance claim to GMI.  (Doc. 1, ¶ 19.)  GMI relayed to Biegler that United Specialty only provides excess coverage, and put him in contact with individuals at USMC to discuss his apparent confusion about the scope of coverage.  (Doc. 1, ¶¶ 19, 20.)  Subsequently, Biegler had two telephone conversations with representatives of USMC, during which it was confirmed that United Specialty, though its general managing agent USMC never intended to provide primary coverage.  (Doc. 1, ¶¶ 19, 20; Ex. A, ¶ 28; Ex. B, ¶ 10.)  Nevertheless, United Specialty agreed to provide such coverage while the policy was in effect.  (Doc. 1, ¶ 19, 20; Ex. A, ¶ 29; Ex. B, ¶ 10.)

When Biegler contacted USMC by telephone, USMC understood it was communicating with the retail broker of its California insured.  (Ex. A, ¶ 27.)  At no point did USMC suspect or believe that, by communicating with Biegler about

4

his California client, it was somehow transacting business in the State of Montana or subjecting itself to the jurisdiction of the courts in the State of Montana.  (Ex. A, ¶ 27.)

On July 3, 2018, USMC informed Biegler that United Specialty would be cancelling the Fleetlogix policy.  (Doc. 1, ¶ 21.)  The policy was cancelled only after the expiration of a 30-day notice period in which Fleeetlogix was able to secure alternative coverage.  (Doc. 1, ¶ 22.)  In placing this coverage, Fleetlogix used the agent it had previously worked with before contacting Biegler.  (Doc. 1, ¶ 22.)  Biegler thus alleges "Fleetlogix lost confidence in Biegler, terminated their relationship with him and used another agent with whom it had previously worked to immediately secure replacement coverage."  (Doc. 1, ¶ 22.)

Most importantly for purposes of the instant motion, Biegler's complaint does not contain a single factual allegation suggesting that either USMC or United Specialty had any significant contacts with the State of Montana, generally or specifically.  Undeterred, Biegler relies on the two phone calls he placed to USMC and the one email he received from USMC—communications that, again, concerned already-purchased coverage by a California insured—to conclude that "USMC knowingly did business with Plaintiff in the State of Montana."  (Doc. 1, ¶ 4.)  He goes on to assert that because USMC was acting as United Specialty's

agent, United Specialty also "knowingly did business with Plaintiff in the State of Montana." (Doc. 1, ¶ 5.)

Biegler is mistaken. His allegations come nowhere near establishing personal jurisdiction over USMC or United Specialty. And to the extent there is any doubt about whether facts could later be discovered that would give rise to personal jurisdiction over these Defendants, the attached affidavits lay any such doubt to rest. Given the facts of this case and the lack of contacts with the State of Montana, the exercise of personal jurisdiction over USMC or United Specialty would constitute a grave due process violation.

## MOTION TO DISMISS STANDARD

The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). When personal jurisdiction is challenged under Fed. R. Civ. P. 12(b)(2), the court may consider the allegations in the pleadings, weigh the contents of affidavits and other evidence, or hold a hearing and resort to oral testimony. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). However, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Rather, "the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v.*

*Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (emphasis added).  As such, "[t]he mere allegations of a complaint, when contradicted by affidavits, are not enough to confer personal jurisdiction over a non-resident defendant." *Chem Lab Products, Inc. v. Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977); *Data Disc, Inc. v. Systems Tech. Assocs.*, 557 F.2d 1280, 1284 (9th Cir. 1977) ("If only one side of the conflict was supported by affidavit, our task would be relatively easy, for we may not assume the truth of allegations in a pleading which are contradicted by affidavit.")  Here, Biegler's own allegations, in addition to the affidavits submitted by USMC and United Specialty, establish Biegler has failed to sustain his burden in demonstrating personal jurisdiction over these Defendants.

## ANALYSIS

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).  In this regard, the Ninth Circuit has recognized that Montana's long-arm statute, Montana Rule of Civil Procedure 4B(1), "permits the exercise of personal jurisdiction over nonresident defendants to the maximum extent permitted by federal due process." *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 578 (9th Cir. 2011) (citing *Davis v. Am. Family Mut. Ins. Co.*, 861 F.2d

1159, 1161 (9th Cir. 1988)).  As a result, "the jurisdictional analyses under state law and federal due process are the same." *Id*.

### A.     General Jurisdiction Is Lacking.

Personal jurisdiction can either be general or specific.  *E.g.*, *BNSF Ry. v. Tyrrell*, 581 U.S. at __, 137 S. Ct. 1549, 1558 (2017).  General or "all-purpose" personal jurisdiction exists when a corporation's affiliations with Montana are so continuous and systematic as to render it at home in Montana.  *Id.*; *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  A corporation is at home where it is incorporated; where it maintains its principal place of business; or, in "exceptional" cases, where its continuous and systematic affiliations with the state render it "essentially at home"—i.e., where its continuous corporate operations are "so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those activities."  *Daimler*, 571 U.S. at 138-39 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).  If a Montana court has general personal jurisdiction over a defendant, the court may adjudicate any claim against that defendant, regardless of where the cause of action arose.  *See King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011); *DeLeon v. BNSF Ry. Co.*, 426 P.3d 1, ¶¶ 7-26 (Mont. 2018).

Here, no general jurisdiction exists because neither USMC nor United Specialty are "at home" in Montana.  Biegler's own complaint establishes that neither is incorporated nor has its principal place of business in Montana.  (Doc. 1, ¶¶ 4, 5.)  Furthermore, this is far from an "exceptional" case in which affiliations with the forum state are so continuous and systematic that a foreign corporation is rendered "essentially at home" there.  *See Daimler*, 571 U.S. at 138-39.  Indeed, apart from a few telephone and email communications with Biegler, there are scarcely any affiliations at all.

The attached affidavits establish that neither USMC nor United Specialty:

- has business operations in Montana;

- is registered to do business with the Montana Secretary of State;

- has any employees working or living in Montana;

- owns or rents property, offices, warehouses or other facilities in Montana;

- has directly placed any advertising in Montana media outlets; or

- derives any significant amount of revenue from Montana.

(Ex. A, ¶¶ 7- 11, 13; Ex. B, ¶¶ 4-9.)  Without question, there is no general jurisdiction over USMC or United Specialty because they are not "at home" in Montana.

9

**B.     Specific Jurisdiction Is Lacking.**

"'Specific' or 'case-linked' jurisdiction depends on an affiliation between the forum and the underlying controversy, principally an activity or occurrence that takes place in the forum state and is therefore subject to the state's regulation." *Buckles v. Cont'l Res., Inc.*, 462 P.3d 223, ¶ 11 (Mont. 2020) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014)).  Courts in the Ninth Circuit use a three-part test to determine whether a court can exercise specific jurisdiction over a non-resident defendant:

> (1)     The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2)     the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3)     the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579-80 (9th Cir. 2011).

Likewise, Montana's long-arm statute requires the purposeful direction of activities at Montana or the purposeful availment of the privilege of conducting activities in Montana.  That statute provides, in pertinent part:

> [A]ny person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:

(A) the transaction of any business within Montana;

(B) the commission of any act resulting in accrual within Montana of a tort action[.]

M. R. Civ. P. 4(b)(1).[1]

Biegler has not alleged a single act by USMC or United Specialty in which they could be said to have purposefully availed themselves of the privilege of conducting activities in Montana, thereby invoking the benefits and protections of its laws. *King*, 632 F.3d at 579-80.  He has failed to allege a single act that would establish jurisdiction under Montana's long-arm statute.  The only acts he has alleged that have any arguable connection to Montana are the limited communications Biegler initiated with USMC, on behalf of his California client and relating to his California client's insurance policy, after the policy had already been purchased and issued.  (Doc. 1, ¶¶ 19-21.)

It is uncontroverted and consistent with Biegler's own allegations that, in selling the policy to a California insured through a Pennsylvania insurance wholesaler, neither USMC nor United Specialty had any idea a Montana broker was involved.  (Doc. 1, ¶¶ 10-27; Ex. A, ¶ 24; Ex. B, ¶ 10.)  It is uncontroverted and consistent with Biegler's own allegations that neither USMC nor United

---

[1] Because subsections (C) through (G) clearly have no application, only (A) and (B) are addressed in any detail.  That said, it is noteworthy that subsection (D) specifically contemplates a circumstance in which personal jurisdiction over a non-resident insurer would be appropriate—when the insurer "contract[s] to insure any person, property, or risk located within Montana at the time of contracting."  (Emphasis added.)  Here, again, the business and risk insured was located in California, not Montana.

Specialty had any contract or agreement with Biegler of any kind.  (Doc. 1, ¶¶ 10-27; Ex. A, ¶ 21; Ex. B, ¶ 10.)  Their agreement (the insurance contract) was with Fleetlogix, a California company with no known Montana affiliations.  (Doc. 1, ¶¶ 10-27; Ex. A, ¶ 21; Ex. B, ¶ 10.)  Finally, it is uncontroverted and consistent with Biegler's own allegations that, given the lack of privity with Biegler, neither USMC nor United Specialty would have had any obligation to pay Biegler the commissions he now seeks to recover.  (Doc. 1, ¶¶ 10-27; Ex. A, ¶ 25-26; Ex. B, ¶ 10.)  There is simply no legal authority supporting the exercise of jurisdiction under such circumstances, and no logical way to contend that, by taking Biegler's calls about his California client, USMC and United Specialty purposefully directed their activities at Montana or purposefully availed themselves of the privilege of conducting activities there.  *King*, 632 F.3d at 579-80.

Courts have declined to exercise personal jurisdiction even when the non-resident defendant, unlike here, actually conducted business activities in the forum state.  The Montana Supreme Court has made clear that merely conducting <u>some</u> business activities is not sufficient for purposes of Montana's long-arm statute: "Jurisdiction comports with M. R. Civ. P. 4(b)(1)(A) if the nonresident business conducts '<u>substantial</u>' business activity in the state from which the claim arises." *Grizzly Sec. Armored Express, Inc. v. Armored Group, LLC*, 255 P.3d 143, ¶ 23 (Mont. 2011) (emphasis added).  Even when the foreign defendant enters into a

contract with a Montanan—something that, again, did not happen in this case—"a non-resident does not subject himself to the jurisdiction of Montana by merely entering into a contract with a resident of Montana." *Edsall Construction Co., Inc. v. Robinson* (1991), 246 Mont. 378, 382, 804 P.2d 1039, 1042.  Similarly, "interstate communication is an almost inevitable accompaniment to doing business in the modern world, and cannot by itself be considered a 'contact' for justifying the exercise of personal jurisdiction." *Id.* (citations omitted).  Likewise, "personal jurisdiction is not acquired through interstate communications made pursuant to a contract that is to be performed in another state." *Cimmaron Corp. v. Smith*, 67 P.3d 258, ¶ 14 (Mont. 2003) (emphasis original) (quoting *Bird v. Hiller*, 892 P.2d 931, 934 (Mont. 1995).

   With these principles in mind, the Montana Supreme Court concluded in *Edsall* that telephone calls initiated by a Montana company soliciting a bid from a Utah tile company to install tile in Utah did not satisfy M. R. Civ. P. 4B(1)(a). *Edsall*, 804 P.2d at 1042-43.  Likewise, in *Cimmaron*, the court found a nonresident business that communicated with a Montana business about a contract that the parties had performed entirely out of state did not qualify as transacting business within the state. *Cimmaron*, ¶ 15.  Here too, communications by a Montana retail broker with nonresident businesses about insurance coverage for

another nonresident business does not amount to transacting business in Montana. *See id.*

Similarly, in *King,* the Ninth Circuit applied Montana's long-arm statute in finding two non-resident insurance companies were not subject to personal jurisdiction in the state, even despite the fact that the motorcycle accident giving rise to the case occurred in Montana, the policies provided coverage for accidents in Montana, and the insurance companies contemplated doing business in Montana by applying for certificates of authority and appointing the Montana Insurance Commissioner as their agent for service of process.  632 F.3d at 572-73.  These contacts—far more substantial than anything alleged against USMC or United Specialty—were deemed insufficient to establish long-arm jurisdiction:

> The Companies have dipped their toes in Montana to test the waters for doing business, but their actions do not amount to a foot planted in the state for purposes of personal jurisdiction. Under Montana law, the Companies' acts of beginning the process of applying to do business and appointing an agent for service of process provide an insufficient basis for the exercise of personal jurisdiction.

*Id.* at 580.

Here, USMC and United Specialty did not even "dip their toes" in Montana. They entered into a contract with a California company through a Pennsylvania agent.  After the contract was concluded and the policy was issued, they were contacted by the California company's broker, who just happened to be from Montana, a broker of which they had no prior knowledge.  Needless to say, the

couple of phone calls and emails subsequently exchanged with Biegler can hardly qualify as knowingly doing business in the State of Montana, much less substantial business.

Finally, although Biegler's jurisdictional allegations focus on the transaction of business subsection of the long-arm statute (subsection A), there is also no credible argument that USMC's or United Specialty's conduct resulted in the accrual of a tort action in Montana (subsection B).  The Montana Supreme Court has repeatedly held a tort action ordinarily accrues where the actions which gave rise to the alleged torts occurred, and a tort action does <u>not</u> accrue in Montana where the only act that occurred in Montana consists of the injury itself. *Cimmaron*, 67 P.3d at ¶ 20; *Tackett v. Duncan*, 334 P.3d 920, ¶ 31 (Mont. 2014); *Threlkeld v. Colo.*, 16 P.3d 359, 364 (Mont. 2000); *Bird v. Hiller* 892 P.2d 931, 933-34 (Mont. 1995).  Here, Biegler's allegations demonstrate the acts/omissions of USMC or United Specialty, and in particular the cancellation of Fleetlogix's policy, did not occur in the State of Montana.  Rather, the decision to cancel the California policy, and any communications relating thereto, were made by USMC in the State of Pennsylvania.  (Ex. A, ¶ 31; Ex. B, ¶ 11.)  In other words, they had nothing to do with a Montana broker with whom USMC and United Specialty had no relationship.

**C.    The Exercise of Jurisdiction Would Not Comport With Due Process.**

Even if Biegler could somehow establish jurisdiction under Montana's long-arm statute—and he cannot—a court's exercise of personal jurisdiction over a defendant, whether general or specific, is limited by the Fourteenth Amendment's Due Process Clause.  U.S. Const. amend. XIV.  An unreasonable exercise of jurisdiction violates the Due Process Clause even if the "purposeful availment" and "arising out of" requirements of the specific jurisdiction test are satisfied.  *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 474-75 (9th Cir. 1995).

For an exercise of jurisdiction to be reasonable, a defendant must have "certain minimum contacts [with Montana] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Tackett*, ¶ 18 (quoting *Walden*, 571 U.S. at 283); *see also Daimler*, 571 U.S. at 126.  The Ninth Circuit considers the following factors to determine whether the exercise of specific jurisdiction is reasonable: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *Ziegler*, 64 F.3d at 475; *Core-Vent Corp. v.*

*Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).  None of these factors are individually dispositive.  *Core-Vent*, 11 F.3d at 1488.

As set forth above, the "extent" of USMC's or United Specialty's interjection into Montana's affairs is easy to gauge because there was no interjection.  Further, the burden of defending in Montana would be great, as all evidence and witnesses (apart from Biegler) would be located in Pennsylvania (where USMC and GMI are based), Texas (where United Specialty is based) and California (where Fleetlogix is based).  (Ex. A, ¶¶ 14, 17, 18; Ex. B, ¶ 3.)  For this reason, and because none of the alleged conduct actually occurred in Montana, an alternative forum is not only available to the parties, but an alternative forum would be far more efficient for resolution of the controversy.  Moreover, because this case involves an insurance policy issued by non-residents to a non-resident, and conduct that occurred outside the borders of Montana, Montana's interest is minimal and the importance of litigating in this state is minimal, if not nonexistent.

In sum, all relevant factors militate against the exercise of personal jurisdiction.  At the end of the day, neither USMC nor United Specialty would have had any way of knowing that taking a telephone call from a broker regarding a California insured would somehow subject them to jurisdiction in the State of Montana.  Under these facts, the exercise of jurisdiction would violate the Due Process Clause.

17

## CONCLUSION

The complaint's allegations, along with the affidavits submitted with this motion, establish Biegler is unable to meet his burden in demonstrating general or specific personal jurisdiction over USMC or United Specialty, and that the exercise of such jurisdiction would be unreasonable in any event.  For these reasons, USMC's and United Specialty's Motion to Dismiss for Lack of Personal Jurisdiction should be granted.

DATED this 13th day of July, 2020.

BOONE KARLBERG P.C.

/s/Thomas J. Leonard
Thomas J. Leonard
*Attorneys for Defendants United Specialty*
*Insurance Company and Underwriting*
*Services Management Company, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d)(2)(E), I certify that the foregoing brief is double-spaced, 14-point Times New Roman font, and contains approximately 4,031 words, excluding the caption and Certificate of Compliance.

DATED this 13th day of July, 2020.

BOONE KARLBERG P.C.

/s/Thomas J. Leonard
Thomas J. Leonard
*Attorneys for Defendants United Specialty Insurance Company and Underwriting Services Management Company, LLC*