John M. Morrison
MORRISON SHERWOOD WILSON DEOLA PLLP
401 North Last Chance Gulch
P.O. Box 557
Helena, Montana 59624-0557
(406) 442-3261
(406) 443-7294 facsimile
john@mswdlaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| MARK BIEGLER,<br><br>Plaintiff,<br><br>v.<br><br>G.M.I. N.A. INC. D/B/A GMI INSURANCE; UNDERWRITING SERVICE MANAGEMENT COMPANY, LLC; UNITED SPECIALTY INSURANCE COMPANY, and DOES 1-10,<br><br>Defendants. | Cause No. CV 20-32-CCL<br><br><br>**DECLARATION OF MARK BIEGLER** |

COMES NOW Mark Biegler, and submits this declaration pursuant to 28 USC § 1746:

1.     I am a citizen and resident of the State of Montana and an insurance producer duly licensed and authorized to do business in the State of Montana since

2005.  At material times, my principle place of business was Montana Premier Insurance, an insurance agency in the state of Montana.  I have personal knowledge of all matter stated in this declaration.

2.      In August 2017 Fleetlogix, Inc. (Fleetlogix) asked me to work for them as an insurance consultant.  Fleetlogix is a business that takes possession of returned rental vehicles and prepares them to return to the rental pool. Fleetlogix contracts with rental car companies to perform this function.   Fleetlogix is responsible for the rental vehicles when they are in their care, custody and control and therefore was required to provide primary liability and physical damage coverage for these vehicles. Fleetlogix had been insured for these risks by Liberty Mutual Insurance Company (Liberty) for approximately six years, but the coverage was scheduled to expire in April 2018 and Liberty had decided it would not renew the policy.

3.      During the time that Fleetlogix was insured by Liberty, I served as Fleetlogix's agent.  In 2017, however, I sold my book of business to HUB. Fleetlogix then worked with Crystal & Company (Crystal) to find coverage to replace the Liberty policy that was expiring in April 2018.  Crystal obtained a bid for "Hired/Non-Owned" insurance for Fleetlogix, underwritten by Republic Vanguard Insurance that provided $1,000,000 coverage with a $50,000 Self Insured Retention (SIR) for a premium of $475,000.  Fleetlogix then consulted me

2

and offered me a chance to continue to serve as its agent if I could find coverage on better terms.

4.      In January 2018, I determined an "admitted carrier" was not going to write coverage for Fleetlogix because of the unique nature of the risk and the fact that Liberty had non-renewed the policy.  In order to identify appropriate and affordable coverage in a timely way, I assembled a marketing team by enlisting colleagues that included Scott Ballard of ec3 Insurance and Craig Cordes of Commercial Sector Insurance.  My marketing team and I began speaking to managing general agencies to canvass carriers that could write this account.  In February 2018, Ballard and I began working almost exclusively with Amy Phillips of GMI who indicated she had a "program" that could write the Fleetlogix coverage and that the carrier could meet the coverage and pricing needs of Fleetlogix.

5.      Phillips and I communicated regarding terms and quotes for the next 6 weeks.  Phillips eventually presented me an acceptable quote for a general liability policy with coverage for "Hired/Non-Owned" vehicles with a $25,000 SIR.  The policy was underwritten by Defendant USMC with Defendant United Specialty "on the paper" (meaning it was the risk bearing entity)  I insisted on a $10,000 SIR and sought to have no third-party administrator involved so that the carrier could

become involved directly and immediately in handling any bodily injury claims that might arise.

6.      In the last week of March 2018, I requested from Phillips a copy of the policy that was going to be issued with all endorsements.  I received a sample copy of the "GL/Hired Non-Owned" auto policy.  I reviewed this sample policy with Fleetlogix's general counsel, Richard Kimball.  The policy met all the requirements that I had requested on behalf of Fleetlogix. These requirements included a "Primary/Non-Contributory" endorsement, which confirmed that the insurance was primary liability coverage and would not seek contribution from other insurance in the event of a claim, as well as an endorsement specifying that the SIR was $10,000.

7.      Another Fleetlogix requirement that the sample policy included was "Garage Keepers" coverage, which provided insurance for damage to the vehicles themselves while they were in the custody of Fleetlogix. I noticed that this coverage was excess coverage rather than primary, so I immediately advised Phillips that Fleetlogix needed *all* parts of the policy to be primary coverage.  On or about April 6, 2018, I spoke personally with Phillips by phone to confirm that everything was in place as quoted and requested.  At this time, *I reiterated* to Phillips that the "Garage Keepers" part of the policy was not shown as primary coverage and *all of Fleetlogix's contracts required all parts of the coverage to be*

*primary.* A few days later, Phillips confirmed to me in another telephone call that the carrier would change the "Garage Keepers" coverage to primary and made clear that she understood that *all* parts of the coverage were required to be primary.

8.      Because I had found coverage that was $25,000 less per year in premium than the coverage available through Crystal, with a lower SIR, Fleetlogix went with me and the USMC/United Specialty policy. Coverage was bound on or about April 10, 2018 and I received the binder, which expressly confirmed $1,000,000 in Commercial General Liability coverage with a $10,000 SIR and $1,000,000 in Hired/Non-Owned autos with a $10,000 SIR. Attached to Doc. 1 as Exhibit 1.

9.      Shortly thereafter, I received the policies themselves and reviewed them for accuracy, ensuring and confirming that all parts of the coverage were primary and that the other requirements were met, which they were. The COMMERCIAL GENERAL LIABILITY COVERAGE PART included a HIRED AUTO AND NON-OWNED AUTO LIABILITY SCHEDULE showing $1,000,000 coverage for Hired Auto and $1,000,000 coverage for Non-Owned Auto. Attached to Doc. 1 as Exhibit 2. It included a specific "PRIMARY AND NONCONTRIBUTORY" endorsement that said the Insured under the policy included "any person or organization when you and such person or organization have agreed in writing in a contract or agreement that such person or organization

be added as an additional insured on your policy." Attached to Doc. 1 as Exhibit 3. The endorsement also specified: "The following is added to 4.a. of Other Insurance of Section IV-Commercial General Liability Conditions: If required in a written contract, your policy is primary and noncontributory in the event of an 'occurrence' caused, in whole or in part, by your acts or omissions, or the acts or emissions of those acting on your behalf...." (Underscoring supplied) This endorsement was specifically requested by me and was an essential and material term of the agreement to purchase USMC coverage through GMI. The declarations page showed $1,000,000 per occurrence limit ($2,000,000 aggregate) and a $450,000 premium. Attached to Doc. 1 as Exhibit 4. This premium was consistent with the general market rate for the primary coverage required and requested. The policy also included a "SELF-INSURED RETENTION ENDORSEMENT" the schedule of which specified the self-insured retention amount as "10,000 per Occurrence". Attached to Doc. 1 as Exhibit 5. The endorsement also expressly stated: "Insurance provided by this policy to which this endorsement applies will be excess of the amount of your Self-Insured Retention shown in the schedule of this endorsement."

10.     It was my understanding throughout this process that Phillips acted as the agent of GMI, once Phillips identified USMC, she and GMI acted as the agent of USMC, and Phillips, GMI and USMC acted as agents of United Specialty.

6

11.    In May 2018, Fleetlogix had a potential bodily injury claim and it was turned into Phillips.  Phillips emailed me that she would turn the claim into the carrier.  She later contacted me and said she spoke to the carrier and the claim needed to be turned into the rental car company's insurance carrier as they would be primary.  I reminded her that the USMC/United Specialty coverage was primary and noncontributory.  Phillips gave me the name and contact information of John Kolb, the underwriter at USMC who provided the United Specialty quote from USMC to Phillips at GMI.  I spoke to Kolb who told me that Fleetlogix was required to have a $1,000,000 underlying policy that was primary and that the USMC policy provided only umbrella coverage.  I explained to Kolb that the United Specialty coverage USMC provided *was* primary and that the premium charged was in line with the marketplace for primary coverage and was 25 times the price of an umbrella policy with a $1,000,000 attachment point.  I spoke with Kolb that day for a total of some three hours.  Kolb and I also exchanged emails about this that are attached hereto as Exhibits 3-5.  Kolb put me in touch with a man named Ed Murphy, who is the owner of USMC.

12.    On or about June 14, 2018, I spoke by phone to Murphy and his attorney, "Freddy."  Murphy and Freddy noted that I was from Montana and Murphy told me he loved Montana and wanted to visit the state.  Murphy asked how I, as a Montana agent, came to represent such a large client in California, and

7

I explained the history of his relationship with Fleetlogix. I also acknowledged that this was a major client for my firm and that it was very important that the coverage remain in place as written. I explained at length that the policy USMC issued was exactly what I had requested for Fleetlogix and what required by Fleetlogix's master service agreements with its rental car company affiliates. Murphy conceded that the policy issued by USMC did provide primary coverage but said he did not intend to write primary coverage. Murphy said he thought he was writing an excess policy. I again explained that this made no sense from a premium standpoint. Fleetlogix had paid a $450,000 in premium and the premium for an excess policy over $1,000,000 in primary coverage was only about $33,000 per $1,000,000. Murphy said he was misled by Phillips at GMI; that she told USMC there was other coverage. Murphy said USMC told Phillips this policy was intended to go over the top of other coverage. Murphy said GMI "places a lot of business for us" and that this error was therefore especially concerning to him. The call ended but Murphy said he would get back to me.

13.    A few hours later, Murphy called me back in Montana on my Montana phone (area code 406) while I was at the office of Montana Premier Insurance. Murphy told me USMC/United Specialty would "honor the policy" as written and the endorsements with it and told me that he and "Freddy" would discuss the matter with GMI and decide if an "E&O claim" needed to be filed

against GMI.  Murphy acknowledged, however, that it was possible that the account would be profitable anyway in which case USMC would not have been damaged by what Murphy said was GMI's error.  Based on Murphy's assurance to me that USMC and United Specialty would honor the policy as written, I did not seek replacement coverage and was confident that Murphy would honor the policy and his word.

14.    I began working with Kolb to gather information to handle the claims that had come in.  Based on Murphy's assurance to me that USMC and United Specialty would honor the policy and endorsements as written, I did not seek replacement coverage and was confident that Murphy would honor the policy and his word.

15.    In June 2018, other claims were reported.  I had email correspondence with Phillips of GMI and Kalb of USMC regarding their claim.

16.    On or about July 5, 2018, while I was driving with my family to Big Sky for the (post) Independence Day weekend, I received an email from John Kolb that a 10-day cancellation was being sent out.  I begged Kolb not to do so until we spoke, but my pleas were in vain.  Fleetlogix received the notice of cancellation while at their board meeting. The reason for cancelation listed in the notice was: "Did not have the underline [sic] limits required stated [sic] on the quote."  See Doc. 1, Exhibit 6.  This was clearly contrary to the policy endorsements that

9

specified the Hired/Non-Owned coverage was PRIMARY and NONCONTRIBUTORY. Moreover, the quote specifically showed that the SIR was $10,000 and that the coverage was primary. The quote also showed the premium which reflected the primary coverage risk being assumed and was many times higher than the premium would have been for umbrella coverage. And Fleetlogix already had "following form" excess liability insurance policy through STARSTONE for which it paid $131,100 for coverage between $1,000,000 and $5,000,000. See to Doc. 1, Exhibit 8.

17.   After I notified Kolb the notice violated policy conditions and was unlawful, the 10-day notice was subsequently replaced with a 20-day notice of termination, which was in turn replaced with a 30-day notice of termination. The 10 and 20-day notices were contrary to the policy's condition page. Due to the initial 10-day notice and subsequent changes, as well as the termination mid-term and the reason specified as cancellation, Fleetlogix lost confidence in me, terminated our relationship and used another agent with whom it had previously worked to immediately secure replacement coverage.

18.   The short-term notices of cancelation and the mid-term cancelation where there was no material change in the risk to be covered were contrary to the conditions of coverage, relevant insurance code provisions, and the standard of care in the insurance industry.

19.     During the next 30 days, I attempted repeatedly to get GMI to have the cancellation rescinded; GMI offered no assistance.  GMI told me to "deal with it" myself and let GMI know what USMC had to say.  I was thereafter unable to get GMI and USMC on the phone and, after I lost the account, GMI and USMC stopped communicating with me altogether.

20.     The quotes for the United Specialty coverage for Fleetlogix were presented to me by GMI and USMC as primary coverage with a $10,000 SIR. Indeed, as noted, the policy specifically contained a primary and noncontributory endorsement that expressly made the coverage primary. At no time prior to the binding of the coverage for Fleetlogix was I informed by any of the Defendants that the policy sold to Fleetlogix was excess to an underlying $1,000,000 policy and not eligible for United Specialty coverage without first exhausting that layer of underlying coverage.

21.     The Fleetlogix account represented $65,000 per year (after $45,000 in year one) in direct GL/HNO commissions, another $30,000 annually for additional lines Fleetlogix had already asked me to secure for them, and another $150,000 or more annually in additional business for me based on the likelihood that I would become the agent for Fleetlogix's workers' compensation plan, which by itself represented $2,000,000 in annual premium. I lost these sums as a result of the negligence of the Defendants and each of them.

22.     Attached hereto as Exhibit 1 is a true and accurate copy of my emails with Amy Phillips.

23.     Attached hereto as Exhibit 2 is a true and accurate copy of my emails reporting the first claims to GMI.

24.     Attached hereto as Exhibit 3 is a true and accurate copy of my email to the claims division of USMC reporting claims.

25.     Attached hereto as Exhibit 4 is a true and accurate copy of a responsive email I received from John Kolb of USMC.

26.     Attached hereto as Exhibit 5 is a true and accurate copy of my reply to Kolb explaining and attaching the PRIMARY NONCONTRIBUTORY endorsement.

27.     Attached hereto as Exhibit 6 is a true and accurate copy of an email I sent June 14, 2018 to my associates on the Fleetlogix placement project, Scott Ballard and Craig Cordes.

28.     Attached hereto as Exhibit 7 is a true and accurate copy of emails I exchanged with John Kolb of USMC on June 15, 2018, regarding working together to gather information to facilitate the handling of claims under the policy.

29.     Attached hereto as Exhibit 8 is a true and accurate copy of an email I received from John Kolb on July 5, 2018, containing a purported 10-day cancelation of the Fleetlogix policy and an email I immediately sent to Kolb in

response to his cancelation email asking for a telephone meeting to discuss the cancelation.

30.    Attached hereto as Exhibit 9 is a true and accurate copy of an email I sent to Kolb on July 6, 2018, reiterating the importance of a telephone meeting and explaining that the cancelation violated the policy and USMC's representations to me.

31.    Attached hereto as Exhibit 10 is a true and accurate copy of an email I received from Kolb July 10, 2018, containing a new 20-day cancelation notice and my response to him reminding him that the policy required a minimum 30-day notice.

31.    Attached hereto as Exhibit 11 is a true and accurate copy of an email from Kolb to me with the 30-day notice.

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this __14th__ day of August, 2020.

_____
Mark Biegler

13