IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MARK BIEGLER,<br><br>                         Plaintiff,<br><br>   vs.<br><br>G.M.I. N.A. INC. D/B/A GMI<br>INSURANCE; UNDERWRITING<br>SERVICE MANAGEMENT<br>COMPANY, LLC; UNITED<br>SPECIALTY INSURANCE<br>COMPANY, and DOES 1-10,<br><br>                      Defendants. | CV-20-32-H-CCL<br><br><br><br>Opinion & Order |

Defendants Underwriting Service Management Company, LLC

(Underwriting Service) and United Specialty Insurance Company (United

Specialty) move to dismiss Plaintiff's complaint for lack of personal jurisdiction,

pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  (Doc. 16).

Having been briefed fully, Defendants' motion is ripe for disposition.

**BACKGROUND**

    This claim arises out of a decision by Fleetlogix, Inc. (Fleetlogix) to

terminate its business relationship with Plaintiff Mark Biegler (Biegler) after

Underwriting Service cancelled a policy issued by United Specialty to Fleetlogix.

Biegler claims that the cancellation of the policy led Fleetlogix to terminate its business relationship with him, causing the loss of future commissions.

Biegler enumerates six separate claims for relief in his complaint. In his first claim for relief (Count I) he alleges that Defendant G.M.I.N.A. Inc. (GMI)[1] "failed to exercise reasonable care to bind the coverage for Fleetlogix that was acceptable to the insurer and/or failed to properly communicate the nature of the coverage to" Underwriting Service and United Specialty. (Doc. 1 at ¶ 30). He further alleges that Underwriting Service and United Specialty are responsible for GMI's conduct "by principles of agency." (Doc. 1 at ¶ 31).

Biegler's second claim for relief (Count II) is directed only at Underwriting Service and United Specialty. He alleges Underwriting Service and United Specialty failed to "review and be aware of the terms of coverage that it bound." (Doc. 1 at ¶ 33).

In his third claim for relief (Count III), Biegler alleges that Underwriting Service failed to provide accurate information to Biegler "in connection with the placement" of the insurance coverage for Fleetlogix and failed to provide accurate information during Biegler's July telephone call with representatives of

---

[1] GMI has also moved to dismiss the complaint, a motion which the Court will address in a separate order.

Underwriting Service. (Doc. 1 at ¶ 37). Biegler further alleges that Underwriting Service made negligent misrepresentations to him in a June 2018 telephone call. (Doc. 1 at ¶ 39). He alleges that United Specialty is liable for those negligent misrepresentations by its agents, GMI and Underwriting Service. (Doc. 1 at ¶¶ 38 - 39).

Biegler's fourth claim for relief (Count IV) is directed at GMI and Underwriting Service and does not name United Specialty. Biegler alleges that GMI and Underwriting Service breached their "absolute duty" to procure the insurance he requested for Fleetlogix. (Doc. 1 at ¶ 42). He further alleges that GMI and Underwriting Service assured him that the requested coverage had been procured. (Doc. 1 at ¶ 43).

Biegler's fifth claim for relief (Count V) is directed at GMI and Underwriting Service and does not name United Specialty. Biegler alleges that Underwriting Service negligently performed the duty it had voluntarily undertaken to provide the primary insurance coverage Biegler requested on behalf of Fleetlogix. (Doc. 1 at ¶ 47).

Biegler attempts to state tort claims in his first through fifth claims for relief, which allege negligence, negligent misrepresentation, and breach of duty. His sixth claim for relief (Count VI), in which he alleges that all three defendants

acted with malice, as that term is defined by Montana law, (Doc. 1 at ¶ 50), does not actually state a separate claim and is designed to support his request for punitive damages.

Biegler negotiated with Amy Phillips (Phillips) of GMI to obtain the United Specialty coverage for Fleetlogix starting in January of 2018. (Doc. 1 at ¶ 12). The policy was underwritten by Underwriting Service with United Specialty "on the paper." (Doc. 1 at ¶ 13). The terms were finalized in April of 2018. (Doc. 1 at ¶ 16).

In May of 2018, Biegler reported a Fleetlogix potential bodily injury claim to Phillips, who contacted the carrier and then gave Biegler contact information for John Kolb (Kolb) the underwriter at Underwriting Service who provided the United Specialty quote. (Doc. 1 at ¶ 19). Biegler contacted Kolb, who put him in touch with Murphy, the owner of Underwriting Service. (Doc. 1 at ¶ 19).

Biegler is a Montana citizen and an insurance producer licensed and authorized to do business in Montana. (Doc. 1 at ¶ 2). GMI is a Pennsylvania corporation authorized to do business in Montana. (Doc. 1 at ¶ 3). Fleetlogix is headquartered in San Diego, California. (Doc. 1-1 at 1).

Underwriting Service is a Delaware limited liability company (Doc. 17-1 at ¶ 5), with its principal place of business in Pennsylvania. (Doc. 1 at ¶ 4).

Biegler's first contact with anyone from Underwriting Service occurred in May of 2018, after the contract terms had been finalized. (*See* Doc. 1 at ¶¶ 19 - 20). Underwriting Service's owners/members are all citizens of states other than Montana. (Doc. 17-1 at ¶ 6). Although Underwriting Service has no business operations in Montana, it has placed a minimal amount of surplus lines coverage for Montana insureds. (Doc. 17-1 at ¶ 7). Underwriting Service is not registered with the Montana Secretary of State, has no employees working or living in Montana, and owns no property in Montana. (Doc. 17-1 at ¶¶ 8 - 10). Underwriting Service does not advertise in Montana. (Doc. 17-1 at ¶ 11). Underwriting Service maintains a website that is "international in scope, not specific to Montana, and through which insurance products may not be purchased." (Doc. 17-1 at ¶ 12). Underwriting Service "does not derive any significant amount of revenues from Montana." (Doc. 17-1 at ¶ 13).

United Specialty is a Delaware Corporation with its principal place of business in Texas. (Doc. 1 at ¶ 5). United Specialty had no direct communication with Biegler or GMI "with respect to the subject insurance policy giving rise to this case" and acted through its general agent, Underwriting Service. (Doc. 17-2 at ¶ 10). Although United Specialty has no business operations in Montana, it has written a minimal amount of premiums for Montana insureds. (Doc. 17-2 at ¶ 4).

Page 5 of  16

Its income from those premiums is "minuscule in comparison to [its] nationwide business operations." (Doc. 17-2 at ¶ 9). United Specialty is recognized as an eligible surplus line insurer with the Montana Insurance Commissioner, but is not registered to do business in Montana with the Montana Secretary of State. (Doc. 17-2 at ¶ 5). United Specialty has no employees working or living in Montana, does not own property in Montana and has not advertised in Montana. (Doc. 17-2 at ¶¶ 6 - 8).

**LEGAL STANDARDS**

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the district court decides the motion without an evidentiary hearing, it must accept as true uncontroverted and well-pleaded factual allegations in the complaint, and plaintiff need only make a prima facie showing of personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Defendants Underwriting Service and United Specialty presented an affidavit in support of their motion (Doc. 17-1) and Plaintiff Biegler submitted a declaration in support of his opposing brief. (Doc. 23). Any conflicts between statements made in the declaration and affidavit must be resolved in Biegler's favor.

*Schwarzenegger*, 374 F.3d at 800.

In determining whether *in personam* jurisdiction exists over a non-resident defendant in a case where subject matter jurisdiction is based on diversity of citizenship, the Court must apply a two-part test. First, the Court looks to the long-arm  statute of the state in which it sits; and second, the Court determines whether application of the statute is consistent with due process.  *See BNSF Ry. v. Tyrell*, 137 S.Ct. 1549, 1558 (2017)(citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)).   Montana courts look to Rule 4(b) of the Montana Rules of Civil Procedure to determine whether a Montana court can exercise personal jurisdiction over a non-resident defendant.  *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 17, ¶ 18 (Mont. 2015).  Under Rule 4(b)(1), a person is subject to the general jurisdiction of the courts of Montana if he or she is "found" within the state and subject to specific jurisdiction if the plaintiff's claim for relief arises "from any of the acts listed in Rule 4(b)(1)(A - G)."  *Id.*  Although Montana's long-arm statute has been construed liberally in favor of finding jurisdiction in Montana courts. s*ee, e.g.*, *Prentice Lumber Company, Inc. v. Spahn,* 474 P.2d 141 (Mont. 1970), Montana courts, like federal courts, must consider "whether the exercise of personal jurisdiction conforms with 'the traditional notions of fair play and substantial justice embodied in the due process clause.'" *Milky Whey*, 342

P.3d at ¶ 18 (quoting *Cimmaron Corp. v. Smith*, 67 P.3d 258 (Mont. 2002)).[2]

Exercise of personal jurisdiction over a non-resident defendant is consistent with due process in one of two circumstances. "If the nonresident defendant's activities in the forum are sufficiently substantial and continuous, general jurisdiction will lie even if the cause of action is not related to defendant's activities in the state. *Pacific Atlantic Trading Co. v. M/V Main Express,* 758 F.2d 1325, 1327 (9th Cir. 1985). "But if the defendant's activities are not sufficiently pervasive to support general jurisdiction, the nature and quality of the forum-related activities must be evaluated in relation to the specific cause of action" to determine whether limited (specific) jurisdiction exists. *Id.*

Plaintiff in this case appears to concede that the activities of Defendants Underwriting Service and United Specialty in Montana are not sufficiently pervasive to support general jurisdiction, arguing in favor of specific personal jurisdiction. (*See* Doc. 22 at 15).[3] The Ninth Circuit uses a three part test to determine whether a defendant has sufficient contacts with the forum state to

---

[2] This case does not appear to raise the same issues now being considered by the United States Supreme Court, after granting certiorari in *Ford Motor Company v. Montana Eighth Judicial District Court*, 443 P.3d 407 (Mont. 2019). The undersigned has reviewed the Montana Supreme Court's opinion and listened to the oral argument before the United States Supreme Court.

[3] The Court uses the pagination assigned to the document in the CM/ECF system, rather than the page numbers assigned by the parties.

assert specific personal jurisdiction:

>(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum; thereby invoking the benefits and protection of its laws;

>(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

>(3) the exercise of jurisdiction must comport with fair play and substantial justice; i.e. it must be reasonable.

*Schwarzenegger,* 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). Although Biegler bears the burden to establish the first two prongs of this test, if and when he meets his burden, the burden shifts to Defendants "to 'present a compelling case' that the exercise of jurisdiction would not be unreasonable." *Id.* (quoting *Burger King Corp. V. Rudzewicz*, 471 U.S. 462, 476 - 78 (1985)).

Because Biegler's claims sound in tort, the Court applies the "purposeful direction" test and considers "evidence that the defendant has directed his action at the forum state, even if those actions took place elsewhere." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). "Under this test, a defendant purposefully directed his activities at the forum if he: '(1) committed an intentional act, (2)

expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* at 1214 (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 111 (9th Cir. 2002)).

## DISCUSSION

Biegler contends that Underwriting Service purposefully directed its acts toward Biegler into Montana through Kolb, starting as early as June 11, 2018, as evidenced by the email exchange between Kolb and Biegler about the primary/non-contributory issue. (Doc. 22 at 18). Biegler further contends that Underwriting Service purposefully directed its acts toward Biegler when Murphy "called Biegler back in Montana at his Montana office on his Montana phone number and pledged to honor the policy and its endorsements." (Doc. 22 at 19). According to the complaint, this phone conversation took place "[o]n or about June 14, 2018." (Doc. 1 at ¶ 20). Biegler also contends that Underwriting Service purposefully directed its acts toward Biegler in Montana by choosing to communicate with Biegler directly when it cancelled the coverage and refused to reconsider this allegedly wrongful act "after many hours of calls and correspondence with Biegler who fully informed them of their obligations." (Doc. 22 at ¶ 19). Biegler appears to argue that the actions of Kolb and Murphy should be attributed to United Specialty because Underwriting Service was acting as an

agent for United Specialty, a fact apparently conceded by United Specialty, at least for purposes of its motion to dismiss. (*See* Doc. 17-2 at ¶ 10).

Biegler argues that his negligent misrepresentation claim against Underwriting Service and United Specialty arises from the emails and phone calls made after Fleetlogix made its first claim against the United Specialty policy, and not from the initial decision by Underwriting Service and United Specialty to provide coverage. (Doc. 22 at 20). He argues that the fact that the emails and phone calls were directed to him in Montana is sufficient to provide this Court with specific personal jurisdiction as to the negligent misrepresentation claim. *Id.* He next argues that this Court can assert specific personal jurisdiction as to his other claims because they arise out of the same nucleus of facts as the negligent misrepresentation claim. *Id.*

The Court begins its analysis by reviewing the record to determine whether Biegler has alleged sufficient facts to meet all three prongs of the "purposeful direction" test, as laid out by the Ninth Circuit. *See Schwarzenegger,* 374 F.3d at 802.

Kolb and Murphy committed an intentional act when they communicated with Biegler via email and by phone. For purposes of this motion, the Court presumes that Kolb and Murphy were acting as agents for both Underwriting

Service and United Specialty when they communicated with Biegler. Biegler has alleged sufficient facts to meet the first test of the "purposeful direction" test as to both Underwriting Service and United Specialty.

The second prong of the "purposeful direction" test requires the plaintiff to allege facts demonstrating that "the defendant's allegedly tortious action was 'expressly aimed at the forum.'" *Picot*, 780 F.3d at 1214 (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010)). While Kolb and Murphy's intentional acts may have been aimed at Biegler, the fact that Biegler was in Montana when Kolb and Murphy contacted him is not sufficient to establish the second prong of the test, which "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons" who live in the foreign state. *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

Having determined that Biegler fails to meet his burden as to the second prong of the "purposeful direction" test, the Court need not reach the third prong. *See Axiom Foods, Inc. v. Acerchem Int'l Ltd.*, 874 F.3d 1064, 1071, n. 6 (9th Circ. 2017). The Court has nevertheless considered the third prong and agrees with Defendants' argument that something more than a foreseeable effect in the forum state is necessary to meet the third prong. (*See* Doc. 26 at 6). Defendants United Specialty and Underwriting Service could not have known that their cancellation

of an insurance policy with Fleetlogix, a California company, could have caused

Biegler to suffer injury in Montana.

Defendants United Specialty and Underwriting Service argue in the

alternative that the Court should dismiss the complaint for lack of personal

jurisdiction over them because Biegler cannot satisfy the requirements of

Montana's long-arm statute.  (Doc. 26 at 7).

Biegler relies on an unpublished case decision entered by Judge Murray for

the United States District Court for the District of Montana in 1975 to support his

argument that a Montana court would have specific personal jurisdiction over his

claim for negligent misrepresentation because the claim accrued in Montana.

(Doc. 22 at 21, citing *Johnson Flying Service v. Mackey Int'l Inc.,* 1975 U.S. Dist.

LEXIS 16642).  Biegler ignores the many changes made in Montana law as it

relates to the long-arm statute since Judge Murray decided *Johnson Flying

Service.*

In *Threlkeld v. Colorado*, the Montana Supreme Court held that when a

plaintiff's "deceit and fraud claims relate entirely to services to be performed" in a

state other than Montana, "the mere existence of interstate communications

relating to those services does not provide a basis for personal jurisdiction" in a

Montana court.  16 P.3d 359, 365 ¶ 30 (Mont. 2000). Biegler's claim that he

suffered a monetary loss in Montana as a result of Defendants' conduct, even when combined with the allegation that representatives of Underwriting Service made material misrepresentations to him in Montana, is not sufficient to establish that his claim accrued in Montana. *Tackett v. Duncan*, 334 P.3d 920, 929 ¶ 35 (Mont. 2014). United Specialty and Underwriting Service correctly argue that the Court lacks personal jurisdiction over them under Montana's long-arm statute, as interpreted by the Montana Supreme Court.

Biegler also argues that this Court has specific personal jurisdiction over United Specialty and Underwriting Service because GMI was acting as their agent in connection with obtaining the insurance policy at issue in this case. Biegler cites a case decided by the United States District Court for the Southern District of Florida to support his argument that Defendant GMI's contacts with Biegler can be imputed to Defendants United Specialty and Underwriting Service because GMI was acting as their agent. (Doc. 22 at 22, citing *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp 3d, 1301, 1314 (S.D. Fla. 2017)). Defendants point out that Biegler fails to cite any Ninth Circuit or Montana law to support his theory and argue that Biegler must satisfy the two-part test laid out by the Ninth Circuit in *Harris Rutsky & Co. Ins. Servc. v. Bell & Clements Ltd.*, to establish jurisdiction based on an agency theory. (Doc. 26 at 10 - 11).

The Court agrees with United Specialty and Underwriting Service that Biegler fails to allege sufficient facts in his complaint to satisfy the Ninth Circuit's agency test. The test is designed for situations where a plaintiff attempts to impute conduct of a subsidiary to a parent corporation. *See Harris Rutsky & Co. Ins. Servc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003). There is nothing in the complaint or in Biegler's declaration to support such a relationship or to meet the requirements of the *Harris Rutsky* test.

United Specialty and Underwriting Service also point out that the Ninth Circuit's agency test may no longer be viable, citing *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014). (Doc. 26 at 10). Putting aside the issue of the continued validity of the Ninth Circuit's agency test, the Ninth Circuit requires that "under any standard for finding an agency relationship, the parent company must have the right to substantially control its subsidiary's activities." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1024 - 25 (9th Cir. 2017). Biegler has neither alleged nor shown that United Specialty and Underwriting Service had the power to control GMI's conduct.

The Court has carefully considered the complaint, Biegler's declaration, and each argument raised by Biegler to support his claim that the Court has personal jurisdiction over Underwriting Service and United Specialty in this case. Biegler

having failed to meet his burden of establishing personal jurisdiction,

IT IS HEREBY ORDERED that the motion of Defendants Underwriting

Service and United Specialty to dismiss for lack of personal jurisdiction (Doc. 16)

is GRANTED.  Plaintiff's complaint is dismissed without prejudice as to

Defendants Underwriting Service and United Specialty  and he is free to file his

case in the appropriate jurisdiction.

Dated this *25th* day of November, 2020.


CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE