IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MARK BIEGLER,<br><br>Plaintiff,<br><br>vs.<br><br>G.M.I. N.A. INC. D/B/A GMI INSURANCE; UNDERWRITING SERVICE MANAGEMENT COMPANY, LLC; UNITED SPECIALTY INSURANCE COMPANY, and DOES 1-10,<br><br>Defendants. | CV-20-32-H-CCL<br><br>Opinion & Order |

Defendant G.M.I.N.A. Inc., d/b/a as GMI Insurance (GMI) moves to dismiss Plaintiff's complaint for failure to state a claim for relief, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 11). Plaintiff Mark Biegler (Biegler) opposes the motion, which is now fully briefed and ready for ruling.

**BIEGLER'S CLAIMS FOR RELIEF**

Biegler enumerates six separate claims for relief in his complaint, all arising from Fleetlogix's decision to terminate its business relationship with him after Underwriting Service and United Specialty cancelled the insurance policy that

Biegler negotiated with GMI.[1] In his first claim for relief (Count I) he alleges that GMI "failed to exercise reasonable care to bind the coverage for Fleetlogix that was acceptable to the insurer and/or failed to properly communicate the nature of the coverage to" Underwriting Service and United Specialty. (Doc. 1 at ¶ 30). Biegler's second claim for relief (Count II) is directed only at Underwriting Service and United Specialty, and need not be addressed in connection with GMI's pending motion. In his third claim for relief (Count III), Biegler alleges that GMI "supplied false information in the course of its business by assuring Plaintiff that [Underwriting Service] was willing to provide primary coverage and by providing a policy that did in fact provide primary coverage when apparently [Underwriting Service] was unwilling to provide primary coverage." (Doc. 1 at ¶ 38).

In his fourth claim for relief (Count IV), Biegler alleges that GMI breached its "absolute duty" to procure the insurance he requested for Fleetlogix. (Doc. 1 at ¶ 42). He further alleges that GMI assured him that the requested coverage had been procured. (Doc. 1 at ¶ 43). In his fifth claim for relief (Count V), Biegler alleges that GMI negligently performed the duty it had voluntarily undertaken to

---

[1] The Court dismissed Biegler's complaint as to Defendants Underwriting Service and United Specialty for lack of personal jurisdiction in a separate order.

provide the primary insurance coverage Biegler requested on behalf of Fleetlogix. (Doc. 1 at ¶ 46).

Biegler attempts to state tort claims in his first through fifth claims for relief, which allege negligence, negligent misrepresentation, and breach of duty. His sixth claim for relief (Count VI), in which he alleges that all three defendants acted with malice, as that term is defined by Montana law, (Doc. 1 at ¶ 50), does not actually state a separate claim and is designed to support his request for punitive damages.

**LEGAL STANDARD**

When determining a motion to dismiss under Rule 12(b)(6), this Court accepts all factual allegations and reasonable inferences as true and construes them in the light most favorable to the nonmoving party, but does not consider conclusory allegations of law and unwarranted inferences. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir.2004) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001)). To survive a 12(b)(6) motion to dismiss, a plaintiff must allege sufficient facts to state a "claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Although a district court is generally limited to considering the contents of the complaint when deciding a Rule 12(b)(6) motion, the Court may look beyond

the complaint to documents incorporated by reference in the complaint and documents subject to judicial notice under Fed. R. Evid. 201. *Khoja v. Orexigen Therapeutics,* 899 F.3d 988, 998 (9th Cir. 2018). "Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims." *Id.* at 1002.

**FACTUAL ALLEGATIONS OF COMPLAINT**

The Court begins its analysis by considering the well-pled factual allegations in the complaint.[2] GMI is a managing general agent that did business with Biegler, an insurance producer licensed by the State of Montana. (Doc. 1 at ¶¶ 2 - 3). Biegler served as an insurance agent for a company called Fleetlogix, which was insured by Liberty Mutual Insurance Company (Liberty Mutual) until he sold his "book of business" sometime in 2017. (Doc. 1 at ¶¶ 10 - 11).

---

[2] The Court sympathizes to some extent with GMI's characterization of the complaint as containing "50 paragraphs of contradictory and confusing allegations against GMI and its co-Defendants." (Doc. 11 at 2). The complaint as drafted is far from the "short and plain statement of the claim" against each defendant required by Fed. R. Civ. P. 8(a)(2). GMI, however, could have helped clarify the issues before the Court by providing a summary of those facts which constitute well-pled factual allegations as to each of the claims asserted by Plaintiff.

Fleetlogix contracts with rental car companies to take possession of returned rental vehicles and prepare them to return to the rental pool. Fleetlogix needs primary liability and physical damage coverage for said vehicles while in its custody and control. (Doc. 1 at ¶ 10). After Biegler sold his "book of business," Fleetlogix began working with Crystal and Company to find another insurer because its policy with Liberty Mutual was scheduled to expire in April of 2018 and Liberty Mutual had decided not to renew the policy. (Doc. 1 at ¶ 11). After Crystal and Company "obtained a bid for 'Hired/Non-Owned' insurance for Fleetlogix, underwritten by Republic Vanguard Insurance that provided $1,000,000 coverage with a $50,000 Self Insured Retention (SIR)[3] for a premium of $475,000," Fleetlogix offered Biegler a chance to serve as it's agent if he could find coverage on better terms. (Doc. 1 at ¶ 11).

Biegler and the colleagues he enlisted to help him find better coverage for Fleetlogix "began speaking to managing general agencies to canvass carriers that could write this account." (Doc. 1 at ¶ 12). By February, Biegler began working almost exclusively with a GMI employee (Phillips) "who indicated she had a 'program' that could write the Fleetlogix coverage and that the carrier could meet

---

[3] The term "self insured retention" is also a term commonly used in the insurance industry. The complaint's use of acronyms needlessly confuses the complaint, and the Court avoids them in this order when possible.

the overage and pricing needs of Fleetlogix." (Doc. 1 at ¶ 12). "Phillips eventually presented Biegler an acceptable policy quote for a general liability policy with coverage for 'Hired/Non-Owned' vehicles with a $25,000" self insured retention underwritten by Underwriting Service Management Company, LLC (Underwriting Service) with United Specialty Insurance Company (United Specialty) "on the paper." (Doc. 1 at ¶ 13).

In the last week of March 2018, Phillips sent Biegler, at his request, "a sample copy of the 'GL/Hired Non-Owned' auto policy." (Doc. 1 at ¶ 14). Biegler reviewed the policy with Fleetlogix's general counsel and it met most of the requirements Biegler had requested, which "included a 'Primary/Non-Contributory' endorsement" confirming "that the insurance was a primary liability coverage" meaning that the insurer "would not seek contribution from other insurance in the event of the claim." (Doc. 1 at ¶ 14). The sample policy also reduced the self insured retention amount to $10,000. (Doc. 1 at ¶ 14).

Although the sample policy included "'Garage Keepers' coverage, which provides insurance for damages to the vehicles" while in Fleetlogix's custody, said coverage was excess rather than primary, which was not acceptable to Fleetlogix. Biegler contacted Phillips by phone "to confirm that everything was in place as quoted and requested" and reiterated that Fleetlogix required all parts of the

Page 6 of 15

coverage to be primary, including the "Garage Keepers" coverage. Phillips later "confirmed to Biegler in another telephone call that the carrier would change the 'Garage Keepers' coverage to primary and made clear that she understood that *all* parts of the coverage were required to be primary." (Doc. 1 at ¶ 15).

The coverage Biegler obtained through GMI had an annual premium and a lower self insured retention than the coverage available through Crystal and Company, so "Fleetlogix went with Biegler" and the policy offered through Underwriting Service and United Specialty. "Coverage was bound on or about April 10, 2018 and Biegler received the binder, which expressly confirmed $1,000,000 in Commercial General Liability coverage with a $10,000 [self insured retention] and $1,000,000 in Hired/Non-Owned autos with a $10,000 [self insured retention]." (Doc. 1 at ¶ 16). Shortly after April 10, 2018, Biegler received the actual policies and "reviewed them for accuracy, ensuring and confirming that all parts of the coverage were primary and that the other requirements [presumably those established by Fleetlogix and communicated by Biegler to Phillips] were met, which they were." (Doc. 1 at ¶ 17).[4]

---

[4] Biegler, through his counsel, attached certain portions of the policy to the complaint as exhibits. GMI, through its counsel, attached a document that counsel claims is "the *complete* policy issued by" Defendants Underwriting Service and United Specialty to Fleetlogix. (Doc. 12 at 9, referencing Doc. 12-1). Biegler does not appear to dispute GMI's claim that Doc. 12-1 is the complete policy that he reviewed and deemed met the requirements.

In May of 2018, Fleetlogix turned a potential bodily injury claim into Phillips, who sent Biegler an email stating she would turn the claim into the carrier. "She later contacted Biegler and said that she spoke to the carrier and the claim needed to be turned into the rental car company's insurance carrier as they would be primary." (Doc. 1 at ¶ 19).

Phillips also gave Biegler the name and contact information for John Kolb (Kolb), the Underwriting Service underwriter "who provided the United Specialty quote from [Underwriting Service] to Phillips. (Doc. 1 at ¶ 19). When Kolb told Biegler that Fleetlogix was required to have a one million dollar underlying policy for primary coverage, Biegler explained that the United Specialty coverage provided by Underwriting Service was primary and "that the premium charged was in line with the marketplace for primary coverage and was 25 times the price of an umbrella policy with a $1,000,000 attachment point." (Doc. 1 at ¶ 19). Kolb then "put Biegler in touch with Ed Murphy (Murphy), the owner of Underwriting Service. (Doc. 1 at ¶ 19)

Biegler had a conversation with Murphy and his attorney on or about June 14, 2018. Murphy conceded that the policy issued by his company (Underwriting Service) provided primary coverage and agreed to continue to cover Fleetlogix under the policy as written. Murphy mentioned a possible "E&O claim" against

GMI, but acknowledged that his company may not have been damaged by GMI's conduct as "it was possible that the account would be profitable anyway." (Doc. 1 at ¶ 20).

In early July of 2018, after the reporting of additional claims in June of that year, Biegler received an email from Kolb that "a 10-day cancellation was being sent out." Biegler unsuccessfully tried to stop the cancellation notice from being sent out until he had a chance to speak to "them." (Doc. 1 at ¶ 21).[5] Fleetlogix received the cancellation notice at a board meeting. "The reason for cancellation listed in the notice was: 'Did not have the underline [sic] limits required stated [sic] on the quote.'" (Doc. 1 at ¶ 21, citing Ex. 6).[6]

According to Biegler, "the quote stated nothing about requiring underlying insurance or about being umbrella coverage. Moreover, the quote specifically showed that the SIR was $10,000 and that the coverage was primary. The quote also showed the premium which reflected the primary coverage risk being assumed and was many times higher than the premium would have been for umbrella coverage." (Doc. 1 at ¶ 21).

---

[5] It is not clear whether "them" in paragraph 21 of the complaint mean Kolb, Murphy, or Biegler's client, Fleetlogix.

[6] Exhibit 6 is a "Notice of Cancellation of Policy" from United Specialty to Fleetlogix dated July 5, 2018, with a termination date of July 15, 2018.

GMI and Underwriting Service presented the quotes for the United Specialty coverage for Fleetlogix to Biegler[7] "as primary coverage with a $10,000" self insured retention. (Doc. 1 at ¶ 25). GMI, Underwriting Service and United Specialty failed to inform Biegler that the "policy sold to Fleetlogix was excess to an underlying $1,000,000 policy and not eligible for United Specialty coverage without first exhausting that layer of underlying coverage" prior to the "binding of the coverage for Fleetlogix." *Id.*

Biegler cites a two-page documents attached to his complaint as Exhibit 8 to support his allegation that "Fleetlogix already had 'following form' excess liability insurance policy through STARSTONE for which it paid $131,100 for coverage between $1,000,000 and $5,000,000." (Doc 1 at ¶ 21).

The 10-day notice was replaced with a 20-day notice and then a 30-day notice of termination after "Biegler notified Kolb the notice violated policy conditions and was unlawful." (Doc. 1 at ¶ 22). The initial 10-day notice and mid-term termination caused Fleetlogix to lose confidence in Biegler and terminate its relationship with him. *Id.*

///

---

[7] In another example of the confusion caused by the complaint's failure to use precise language, ¶ 25 references quotes "presented to Plaintiffs" even though Biegler is the sole plaintiff in this case.

Over the next thirty days, "Biegler attempted repeatedly to get GMI to have the cancellation rescinded; GMI offered no assistance," telling "Biegler to 'deal with it' himself." (Doc. 1 at ¶ 24). Biegler could not get representatives from GMI and Underwriting Service "on the phone" and after Biegler lost the account, GMI and Underwriting Service "stopped communicating with Biegler." $Id.^8$

Biegler anticipated receiving $65,000 per year in commissions from Fleetlogix for securing the general liability and hired/non owned auto insurance for it, "another $30,000 annually for additional lines Fleetlogix had already asked Biegler to secure . . ., and another $150,000 or more annually in additional business for Biegler based on the likelihood that Biegler would become the agent for Fleetlogix's workers' compensation plan, which by itself represented $2,000,000 in annual premium." (Doc. 1 at ¶ 26).

**ARGUMENTS**

GMI essentially asks the Court to ignore the "irrelevant, misleading and contradictory allegations" of Biegler's complaint and look "instead at the terms and conditions of the insurance policy at the center of this dispute" and dismiss Biegler's claims for failure to state a claim. (Doc. 11 at 4). GMI argues that

---

[8] The Court presumes that the lost account referenced in ¶ 24 of the complaint is the Fleetlogix account as that is apparently the only account Biegler allegedly lost as a result of GMI's conduct.

Biegler's claims "are entirely unsustainable as a matter of fact and law" because Biegler is a licensed insurance agent and is responsible for any errors or omissions involved in binding the Fleetlogix policy because he "was the last in line to advise Fleetlogix" and because the policy contained a clause allowing the insurer to terminate it upon a 30-day notice. (Doc. 11 at 2 - 3).

Although Biegler admits that GMI "placed the primary surplus lines coverage" he requested, Biegler argues that GMI "failed to inform the insurer that the coverage was primary while assuring Biegler that reliable primary coverage had been placed." (Doc. 14 at 7). Biegler alleges that GMI breached its absolute duty to provide the requested coverage as well as its general duty of reasonable care. (Doc. 14 at 20 - 21). Biegler also alleges that GMI misrepresented the fact that it had obtained primary coverage for Fleetlogix. (Doc. 14 at 23).

**DISCUSSION**

In his first cause of action, Biegler alleges that "GMI failed to exercise reasonable care to bind the coverage requested and required by Fleetlogix through Plaintiff as its agent." (Doc. 1 at ¶ 30). In his fourth cause of action, Plaintiff alleges that GMI "had an 'absolute duty' to procure the insurance requested by Plaintiff on behalf of Fleetlogix" and violated that duty. (Doc. 1 at ¶¶ 42 - 43). In his fifth cause of action, Biegler alleges that "GMI voluntarily undertook the duty

to procure and secure the primary insurance coverage requested by Plaitniff on behalf of Fleetlogix" and failed to do so. (Doc. 1 at ¶ 47). Biegler's first, fourth and fifth causes of action essentially represent alternative methods of attempting to plead a negligence claim against GMI.

Under Montana law, "an insurance agent owes an absolute duty to obtain the insurance coverage which an insured directs the agent to procure." *Monroe v. Cogswell Agency*, 234 P.3d 79, 86 ¶ 31 (Mont. 2010). Biegler's negligence claims against GMI (Counts I, IV and V) all fail for the simple reason that GMI provided Fleetlogix with the primary coverage Biegler requested. (Doc. 1 at ¶ 17). GMI's motion to dismiss will be granted as to Counts I, IV, and V of the complaint.

In his third cause of action, Biegler attempts to assert a negligent misrepresentation claim against GMI. The State of Montana has adopted the definition of negligent misrepresentation found in the *Restatement (Second) of Torts*. *Morrow v. Bank of America*, 324 P.ed 1167, 1180 ¶ 51 (Mont. 2014). To state a claim for negligent misrepresentation, Biegler must allege facts sufficient to show that GMI: (1) while acting in the course of its business; (2) supplied false information; (3) for Biegler's guidance in a business transaction; (4) failed to exercise reasonable care in obtaining or communicating the information; (5)

Biegler justifiably relied on the information; (6) and the reliance caused Biegler to suffer pecuniary harm. *Id.*

According to Biegler, GMI provided him with false information by assuring him that Underwriting Service "was willing to provide primary coverage and by providing a policy that did in fact provide primary coverage." (Doc. 1 at ¶ 38). The problem with Biegler's theory is apparent on its face – the policy procured by GMI provided primary coverage. It appears that Underwriting Service and United Specialty may have mistakenly thought that the coverage was surplus to another policy. To the extent that GMI misrepresented facts to Underwriting Service and United Specialty about the nature of the coverage, they may have claims against GMI. Biegler cannot bootstrap a potential claim against GMI by Underwriting Service and United Specialty to form the basis of his own claim. GMI's motion to dismiss will be granted as to Count III.

Biegler's second claim for relief is directed at Underwriting Service and United Specialty and does not name GMI. The Court therefore need not address Count II in this order. As explained above, Biegler's sixth claim for relief, in which he alleges malice, does not actually state a separate claim and is designed to support his request for punitive damages. Given that Biegler fails to state a claim against GMI under any theory, he cannot prevail on his punitive damages claim.

Page 14 of 15

Biegler fails to state a plausible claim against GMI based on either negligence or negligent misrepresentation. GMI procured the promised coverage for Fleetlogix and did not misrepresent the terms of the coverage procured. Accordingly,

IT IS HEREBY ORDERED that Defendant GMI's amended motion to dismiss (Doc. 11) is granted. The clerk is directed to enter judgment dismissing the complaint with prejudice as to Defendant GMI and without prejudice as to Defendants Underwriting Service and United Specialty.

Dated this 7th day of December, 2020.

*[signature]*
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE